We'll move to our sixth argument of the morning. It's in Appeal Number 23-1591, the United States v. Shannon Cotton. Mr. Miller, I saw you. Good morning. Yep, Mr. Drysdale. Good morning. May it please the Court, Counsel Eugene Miller for the United States. The District Court erred in holding that it was required to reduce the defendant's 2007 felony conviction classification from a Class A felony to a Class C felony during a supervised release revocation hearing. Certainly, a District Court has discretion to consider intervening changes in the law in determining an appropriate sentence, but the District Court erred here in finding it was required to apply those intervening changes in the law at a supervised release hearing. From a statutory interpretation, just looking at the revocation statute by itself, I know government is focusing on the front end of that sentence where the defendant is focusing on the is, and so can we talk through how we should be looking at that sentence? Yes, Your Honor, you're exactly right. The phrase cited by the United States is the Class A felony is based on the offense that resulted in the term of supervised release. In this case, the offense that resulted in the term of supervised release was a violation of 841B1B that carried a maximum sentence of life imprisonment in 2007 at the time, which was not objected to in all the parties agreed. The statute also says, if it is a Class A felony, and the defense argument is that that the offense that was committed in 2007, hypothetically, would then be today, and there are various problems with that reading. The United States reads the word is there as that offense when it was committed in 2007 was a Class A felony. It remains a Class A felony and is a Class A felony because, as we'll get into, because a court is never required to reduce a sentence based on its provisions. But let's look at some of the hypotheticals on- And I guess here it's best to kind of own that in this case, the district court did make the decision to do the reduction. It did, but it wasn't a discretionary decision. What the court found, and that's why it's in harmless here, is that it was required to apply an intervening decision, Ruth, to the 2007 conviction. It was required to apply the First Step Act's change thresholds to the 2007 conviction. And therefore, the felony was, it determined, was required to find it was reduced from a Class A felony to a Class C felony, which lowered the statutory maximum from five years to two years. I don't want to collapse the two procedural steps, okay? I think that's what's happening as far as the argument. So at first, in 2020, and I might have the date wrong, when the sentence was initially reduced? Oh, you're talking about the First Step Act reduction? Correct. That is correct. The defendant was sentenced in 2007 before the Fair Sentencing Act. The Fair Sentencing Act did not give the defendant relief because he was sentenced before its effective date. The Fair First Step Act did allow the court then to sentence the defendant as if those conditions were in place, and the district court then addressed the reduction request and decided in its discretion, although it was not required to, to reduce the defendant's sentence from 262 months to 188 months. But that provision... So that's the discretionary decision. That's the discretionary decision. And that decision, as it said, it wasn't a new judgment. It was just an order reducing the sentence under the First Step Act and stating all other conditions of that original conviction, including the terms of supervised release, remained in place. Then, the defendant was released soon thereafter based on the reduction, committed violations of the supervised release, the court revoked the supervised release, and then we come to the sentencing where the court has to determine. And we... The government concedes. The court... It's almost double-dipping. The court could still consider the intervening changes of law. Ruth could consider the First Step Act in determining what would be an appropriate sentence for the defendant in exercising its discretion. The government's position, however, though, is at that point, the court was not required, required to apply Ruth retroactively, and it was not required to apply the First Step Act retroactively. The court found it was required to apply both of them retroactively. And that, in that case, each of those are errors that independently, the government argues, would require a remand for resentencing. And I do just want to address the... Looking at what the word is, if the defendant's definition was taken into place. So we have to... That would mean that at every supervised release revocation, now, going forward, a court must determine the offense that was committed in 2007, 2005, whatever it might be. What that offense would be today under the reading of the defense. That would require not just applying... We're not just talking about applying Ruth. We're talking about applying every intervening decision since then. We're talking about applying... For example, you could posit that we all have seen the Bruin line of cases. We're dealing with those in the district court. Could a defendant who's on supervised release for being a felon in possession then argue that that prior felony violates Bruin as applied to that conviction? And in that case, then what would the felony be at all if the argument was it's not a felony? That would basically eviscerate the statements. But that's not the argument that Cotton is making here. I don't think we should go down that rabbit hole and stick with our limited time what Cotton is arguing. I believe that would be the result if the district court's opinions were affirmed. But I will get right back to what the areas are. First we have Ruth. The argument is that the district court was required to apply Ruth to determine what the class of felony was. But this court has been clear, it was Torres-Flores, that a revocation proceeding is not the proper avenue for a collateral attack on an underlying conviction. That's essentially why... Is he presenting a collateral attack on the underlying conviction? He is, Your Honor. The Jones case we cite in the third district addressed the very same argument where the defense said, we're not collateral attacking the prior conviction. We're just saying the court has to determine what that prior felony is. Now apply intervening law. And the third circuit said there, we're not convinced that that's anything other than a collateral attack on the conviction. And this court has held that Ruth is not retroactive in context like in a first step act, reduction hearing itself. A court is not required to apply Ruth. Why do we even have to look at the retroactivity law though if the question is one of statutory construction? And if is means as of the time of the revocation? Well I would say here that... I think you're right. If is means at the time of the revocation, then we wouldn't look at whether Ruth is retroactive. But as I was discussing, that is completely... I don't believe that is what the statute says or means or what Congress could have intended because that's unworkable. For example, that would eviscerate the Savings Act under one... And I'll give an example. Say you have a statute of marijuana conviction. A defendant is convicted of a marijuana conviction, gets released on supervised release. There's certainly discussion. Congress decides, and it can make this decision, we're going to legalize marijuana. That is no longer a crime. But we're not going to state in that statute that prior penalties are extinguished. Therefore under the Savings Act, it makes it clear, prior penalties still exist for that offense. But if the reading of is is right, then a defendant who is subject to those penalties is on supervised release and commits a violation, they could argue, oh, you can't sentence me to prison for this because you have to determine the class of felony now for that offense that I committed years ago. And now there would be no criminal offense at all. When Mr. Cotton received the discretionary sentence reduction under the First Step Act, was there anything about his 2007 judgment and commitment that changed? No, Your Honor. There was not. There was just an order issued by the court that changed, that reduced the penalty in the court's discretion from 288 months to 188 months of imprisonment, reduced the term of supervised release from eight years to six years, and then left all terms of supervised release in place, and specifically stated that- So isn't that the way to construe the term is? In other words, the judgment and conviction before the exercise of discretion under 404B. There's no question that it is what it says in 2007, it was an AB1B conviction that way. And that remains true in the present tense after the discretionary sentencing reduction. We would agree with that, Your Honor. And we would further agree that because of the application here, it has to apply both to intervening changes in the law, like Ruth, right, and to the First Step Act. And in other words, it has to be a broad- it can't be what the hypothetical fence would be today, is the position of the government. In other words, it's not kind of a categorical, non-defendant specific inquiry. That's correct, Your Honor. If you have no further questions- Okay, very well, Mr. Miller. Thank you. Mr. Dreisdell, nice to see you. Good morning. Thank you, Your Honor. Good morning. May it please the Court. My name is Tom Dreisdell. I'm here today on behalf of Shannon Cotton. Your Honor, the District Court did correctly determine and respect congressional choice on retroactivity of the Fair Sentencing Act when it said that Mr. Cotton's conviction is a Class C felony under 3583E3. And again, still here this morning, multiple times I heard the government use the word was. They're continuing to use the word was. They used it in their brief at page 12. They abruptly stopped the quote in the statute, and they changed the word is to the word was in their brief, because that's the only way their reading works when you combine it with Okay. I'm very thankful you just said that, because in your brief, you emphasize, correct me if I misstate this, okay? You emphasize in a number of places that the relevant action is the action Congress took with the First Step Act, and in particular with the authority to convert upon district judges under 404B. Is that fair? What's very relevant here is Congress conferring that authority. What's relevant here is Congress, through the First Step Act, spoke to the retroactivity. When Congress enacted the First Step Act, did it functionally, because it didn't formally, did it functionally modify Shannon Cotton's judgment of conviction from 2007? It did. That's what Congress did when it made it retroactive. It went back to 2007 and said, distribution of five grams of crack cocaine is. Okay, good. So here's my hypothetical. Assume another defendant, John Doe, who has exactly the same background as Mr. Cotton. Everything is the same. But for one reason or another, Mr. Doe's district court judge did not exercise the discretion to reduce the sentence. Okay? Okay. Released, supervised release violation, what outcome? He still had his statute retroactively changed, if it fits, assuming that he was convicted by saying five grams of crack cocaine. So therefore, nothing in your argument depends upon the district court exercising its discretion to reduce Mr. Cotton's sentence to 188 months? It doesn't, Your Honor. And the government continues to emphasize that the district court didn't talk about his class of felony in the judgment and conviction. Well, it wouldn't have a reason to. The district court's not, because one, that was automatic by act of Congress through retroactivity, and two, it doesn't become relevant unless and until the defendant is revoked. So why would the district judge go and say, oh, I'm also changing his class of felony to a class B because that's what's in it? It's a very broad conclusion that Congress, in conferring that discretion upon a district court judge, also modified large categories of criminal judgments. I don't think it really is, Your Honor, because what Congress was doing, we can see what Congress was doing through the First Step Act and the Fair Sentencing Act. They were saying the penalties that disproportionately affected people charged with crack cocaine, which was mostly minorities, we don't want those to apply anymore. And that's exactly what the government's trying to do here today. They're trying to come back into this court and say, we have this- You sure they went that far? I thought they stopped short of that. I thought they stopped short of saying, we will allow, but not require, a district court to reduce a sentence. But this isn't a sentence reduction, and that's where the government fails. No, no, no. In the 404B motion. Sure. In a 404B motion. But this isn't a 404B motion. This isn't a sentence reduction. It is setting a statutory maximum on revocation. So the congressional action that you're talking about is the enactment of the First Step Act? Correct. Right, that's why I'm focused on that congressional action. Right, and what they said under that is, and this is where the government, their whole argument really falls with 404C, because the government's actually misquoting 404C. They say in their reply brief, district courts are not required to apply the reduced penalties of the Fair Sentencing Act. That is not what 404C says. 404C says, nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section. That is saying, if you file a 404B motion, you don't have to have a sentence reduction. It's not saying you can ignore the retroactivity of the act when you come back on a revocation and set the statutory maximum. They're misquoting the language of 404C to get where they're going. And really, I think the biggest problem here is Congress gets to draw the line, and they drew it here. And they said, look, we're not going to make district courts fling open the prison doors just because somebody's eligible when they file a 404B motion. That does not mean that when you come back on a revocation, the government can essentially claw back some of your First Step Act relief and say, we're going to give you the penalties that don't exist anymore. The part, one part of your argument I want you to react to, and that's this. It seemed the very same Congress that enacted the First Step Act, of course, put H in 2255 and put E in 2255. Correct. Okay. And we know that somebody situated like Shannon Cotton today could not go in on a second or successive under H or could not access 2241 through E.  No, because of Jones. Because of Jones. Right. Okay. That's why it is a bit of an indirect attack, or it's the use of 3583E3, you with me? Yes. Okay. To indirectly get at a Ruth error. And what I have a hard time with is how is that construction, if that's allowed under E3, how is that consistent with the limitations in H and E? So I think one of the things when we're talking about collateral attacks in Ruth and 2255. First of all, the case law, I think, talks about out of time 2255s. Ruth can still be a basis for a 2255 within a year. When we get to this argument, it's not so much about collateral attacks and things like that. It's about coming back in front of a district court and saying, everybody here recognizes that that 851 was bad. It was never good. That's what Ruth says. Ever. It wasn't good when it was filed. It was never, ever good. Now, do we go back in front of the court and say, let's ignore that and use it to set a statutory maximum? No, no, no. You shouldn't ignore it. You should argue. You should absolutely take stock of the law today. You know, and argue and say, and functionally treat the ceiling as two years. But again, Your Honor, that's, that's, it's just compounding upon the error. I don't understand why we're using an admittedly bad 851 to say we're going to use it to set a statutory maximum. Everybody agrees it never should have been filed because it was never any good. And so, well, you say that now knowing, knowing Ruth, but even without Ruth, it's still not good. Well, he had an opportunity. Cotton could have been Ruth. He could have been, Your Honor, but it's still coming back in front of the court and saying, look, we're just going to use this error that everybody recognized was wrong, and we're going to use it to set a statutory maximum. And then the government is going to turn around, which they do in most revocation cases, and ask for the statutory maximum sentence. I get that we can make the argument under 3553A, but the fact of the matter is statutory maximums often, often either help or harm my defendant. It's not the same as coming in front of the court and making a 3553A argument. It certainly wouldn't be in this case. The government's angling for the statutory maximum. District courts rarely give the statutory maximum on a supervised release revocation. It would think that that's correct, and, you know, so, but that's what they're angling for here. That's, and so the fact that we can just come and say, oh, that's fine, you can just address it under 3553A, even though we admit it's an error, instead of addressing it statutorily. Is Cotton attempting to apply Ruth retroactively? No, I don't think so. I think what Cotton is saying is, I never should have had the enhanced penalties, because this is kind of a separate inquiry here. One's on the First Step Act, and one's on Ruth, I think. It takes us from an A to a B to a C. And I don't think he's trying to apply anything retroactively. What he's trying to say is, I just don't use that 851 that was never any good to set my statutory maximum. It's just simply not the same. Are we creating a circuit split, if we find, for you? I don't think so, because I don't think the Armed Career Criminal Act, which is what the government is relying on, is the same thing as an 851. And I've briefed this, and I'll stand on my briefing as to why. I don't think it's the same thing. We treat those things in the law differently all the time. And so, no, you're not creating a circuit split, if you hold in favor of us. And I think the one thing I would like to leave this court with is, the government's entire position here seems to be based on finality across the board. Finality is not everything. It's not just always, well, it's final. It is about fairness, and it's about equality, and that's what Congress chose through the Fair Sentencing Act and the First Step Act. And that's what needs to matter here for Shannon Cotton. Thank you, Your Honors. Very well. Thank you, Mr. Drysdale. You have Mr. Miller? Yeah, we'll give you a minute. The court is right. It's unfair to say the government always asks for the maximum sentence. We ask for a policy statement guideline sentence, typically, and supervised release hearings, and judges typically do not give the maximums. The defendant is seeking to collaterally attack his conviction from 2007, just trying to do it indirectly through the supervised release proceeding. This court has a lot of jurisprudence that talks about that being improper. And just to address the First Step Act, I think it's clear, as the government argues, the First Step Act did not automatically reduce the class of felonies. And this, I think it's the Mid-Zionowski case from 2023, which we cited, is the perfect example. A defendant receives a life sentence for drug conspiracy, there were other charges, but a life sentence for drug conspiracy, 10 to life, comes back then when the penalty is reduced to 40 years under the First Step Act. The district court exercises discretion and does not reduce that life sentence. And this court affirms. If the First Step Act automatically reduced that class of felony from a Class A felony down to a Class B or C felony, then that would be an illegal sentence. And this court would not affirm an illegal sentence. This court affirmed that because the government's argument isn't about finality here as much as it is about discretion. Courts have discretion. Concepcion found that district courts should have discretion. All we're asking is that this court find that district courts have discretion to apply intervening changes in the law, but they're not required to do so. Thank you. Okay, Mr. Miller, thanks to you. And Mr. Drysdale, thanks to you. This case was very well presented. I appreciate it.